UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM IRENE HOLADAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>　　　　Defendant. | No. 2:14-cv-1870-KJN<br><br><br><br>ORDER |

　　　　Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 25, 2010, through the date of the final administrative decision.  (ECF No. 13.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 17.)  Plaintiff filed a response to defendant's cross-motion for summary judgement.  (ECF No. 18.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 9.)

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on April 19, 1970, has a high school education and is able to communicate in English. (Administrative Transcript ("AT") 32, 90-91, 207, 214.)[2] She has worked as a retail customer service representative, forklift driver, shipment receiver clerk, deli manager, and security guard. (AT 91-95.) On October 19, 2010, plaintiff applied for DIB and SSI, alleging that her disability began on September 25, 2010. (AT 207-22.) Plaintiff alleged that she was disabled due to limitations arising from a combination of gastroparesis, pancreatitis, diabetes, bipolar disorder, depression, seizures, and asthma. (AT 237.) After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on July 19, 2012, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 85-132.) The ALJ issued a decision dated September 19, 2012, determining that plaintiff had not been under a disability, as defined in the Act, from September 25, 2010, through the date of that decision. (AT 19-34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 6, 2014. (AT 1-5.) Plaintiff then filed this action in federal district court on August 8, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly de facto reopened a previous administrative decision denying plaintiff's previous applications for benefits; (2) whether the ALJ improperly considered and weighed the medical opinion evidence in the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

record; (3) whether the ALJ erroneously discounted plaintiff's own testimony concerning her symptoms and functional limitations; (4) whether the ALJ failed to list all of plaintiff's severe impairments at step two; and (5) whether the ALJ improperly determined that plaintiff's impairments did not meet or equal the requirements for a listing at step three.

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). However, the court may only consider the reasons given by the ALJ for his decision and "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630.

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

not engaged in substantial gainful activity since September 25, 2010, the alleged onset date. (AT 22.) At step two, the ALJ found that plaintiff had the following severe impairments: "seizure disorder, diabetes mellitus, peripheral neuropathy, asthma, carpal tunnel syndrome, mood disorder and personality disorder." (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: the claimant is able to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant is able to sit for 8 hours in an 8-hour day with normal breaks. The claimant is able to stand/walk for 6 hours in an 8-hour day with normal breaks. She requires a sit/stand opinion without leaving the workstation. The claimant will be able to sit, stand, or walk for about 45-60 minutes at one time before changing positions. The claimant must avoid all exposure to fumes, dusts or noxious odors, as well as work hazards, such as unprotected heights and moving

---

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

>machinery.  The claimant is unable to climb ladders, ropes, or scaffolds and unable to balance.  The claimant is limited to occasional stooping, crouching, crawling or kneeling.  She may perform frequent fine or gross manipulation with the bilateral upper extremities.  The claimant has no limitations with the ability to receive, understand, remember and carryout [*sic*] simple and detailed job instructions.  The claimant is limited to occasional receiving, remembering, understanding and carrying out complex job instructions.  The claimant is able to interact appropriately with supervisors, co-workers and public.  The claimant is able to make work decision and adjust to changes in the workplace.

(AT 24.)

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work.  (AT 32.)  At step five, the ALJ determined that, in light of plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, specifically, the representative occupations of telemarketer, receptionist, and office clerk.  (AT 33.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from September 25, 2010, through the date of the ALJ's decision.  (Id.)

>B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations
>>1.     *Whether the ALJ De Facto Reopened a Prior Decision Denying Plaintiff's Previous Applications for Benefits*

First, plaintiff contends that the ALJ erred by effectively reopening a prior decision denying previous applications for benefits that plaintiff had filed.  More specifically, plaintiff asserts that the evidence in the record shows that ALJ reopened a prior adverse decision dated September 24, 2010—just one day prior to the alleged onset date in the current action—that found plaintiff not disabled through the date of that decision.  She claims that the ALJ considered medical evidence that was either developed during or alluded to the disability period alleged in plaintiff's prior applications for benefits under Titles II and XVI of the Act, and that the record includes the transcript of the administrative hearing with regard to those applications and the decision itself.  The court finds plaintiff's argument unpersuasive.

////

////

At the outset of his decision, the ALJ expressly declined to adopt the prior non-disability determination when he stated the following:

> There is a final decision dated September 24, 2010 on a prior disability claim filed on April 16, 2009, which found the claimant not disabled. Therefore, Acquiescence Ruling 19-4(9) is pertinent to the current application. The ruling indicates a presumption of continuing nondisability when adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim. However, the prior decision is not adopted or made part of the record in this instance and the undersigned has considered the facts and issues de novo in determining disability with respect to the unadjudicated period.

AT 19. This demonstrates that the ALJ did not intend to reopen the previous decision or otherwise reconsider whether plaintiff was disabled during the period addressed by that previous decision.

While a copy of the transcript of the administrative hearing regarding plaintiff's prior applications is contained in the record, the ALJ did not in any way reference or otherwise provide any indication that the testimony contained therein was considered in any manner, let alone with regard to the previously adjudicated period. Furthermore, a review of the record shows that plaintiff herself was the one who submitted a copy of the decision denying her previous applications for benefits (AT 350-65), and there is no indication anywhere in the ALJ's decision or the rest of the record that the ALJ revisited or otherwise considered his findings and determinations made in that prior decision when deciding plaintiff's applications at issue here. Finally, while the ALJ discussed in his decision some medical evidence that was developed prior to the period at issue here, it is clear that the ALJ considered that evidence in the context of how it related to whether plaintiff was disabled during the period at issue in the present action, and not with regard to the previously adjudicated period. Indeed, the ALJ's discussion of this evidence shows that he relied on it to support his determination that plaintiff's seizure activity began to stabilize during the relevant period after she became compliant with her medication, which occurred after a period of non-compliance that related back to the period addressed by the ALJ's decision on plaintiff's prior applications. (See AT 26-28.)

////

In short, plaintiff fails to demonstrate that the ALJ de facto reopened his prior decision finding plaintiff not disabled during a period prior to the one at issue here such that remand for further consideration of the evidence with regard to that previous period is warranted.

### 2. *Whether the ALJ Improperly Considered and Weighed the Medical Opinion Evidence in the Record when Determining Plaintiff's RFC*

Next, plaintiff argues that the ALJ improperly considered and weighed the medical opinion evidence in the record when determining plaintiff's RFC. Specifically, plaintiff asserts that the ALJ failed to properly consider and weigh the opinions of Dr. Birk, Dr. Friesen, Dr. Dorsett, Dr. Khan, and Dr. Morris.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

### a. Dr. Birk

Dr. Birk, one of plaintiff's treating physicians, completed a checklist RFC questionnaire regarding the functional impact of plaintiff's physical impairments on July 10, 2012.  (AT 1233-36.)  Therein, he opined that plaintiff could sit for no more than 45 minutes at a time and stand for no more than 15 minutes at a time.  (AT 1234.)  He also opined that plaintiff could stand/walk for about 4 hours total in an 8-hour workday, and could walk no more than 1 block without needing rest or experiencing severe pain.  (Id.)  He determined that, during an 8-hour workday, plaintiff would need to alternate between sitting, standing, and walking, and would need to walk around every 15 minutes.  (AT 1234-35.)  He also determined that plaintiff would need to take unscheduled breaks consisting of 10 to 15 minutes during an 8-hour workday.  (AT 1235.)  Dr. Birk further opined that plaintiff could rarely stoop, crouch, climb stairs, and climb ladders.  (Id.)  Finally, Dr. Birk opined that plaintiff's impairments would cause her to be absent from work about 2 days per month.  (AT 1236.)

The ALJ provided the following reasons for assigning "little weight" to Dr. Birk's opinion:

> First, the assessment contrasts with a multitude of treatment reports showing the claimant is stable when medically compliant, as illustrated above.  Moreover, the assessment contrasts with the claimant's physical examination(s) in June 2012.  At that time, treating physicians reported the claimant was a "well-appearing female who appears comfortable and conversation [*sic*], sitting upright."  Clinical findings showed no abnormalities, including no gastrointestinal tenderness and no musculoskeletal abnormality.  Such evidence is inconsistent with the serious limitations reported by Dr. Birk.  Lastly, the assessment contrasts with the claimant's history of conservative treatment and the record as a whole.

---

(6) specialization.  20 C.F.R. § 404.1527.

(AT 32 (citations to the record omitted).)

Plaintiff contends that the ALJ erred by not providing clear and convincing reasons for discounting Dr. Birk's opinion. However, Dr. Birk's opinion was contradicted by other opinions in the record, namely the opinion of State agency reviewing physician Dr. Ombres, who opined that plaintiff had physical functional limitations less severe than those opined by Dr. Birk. Accordingly, the proper standard for determining whether the ALJ properly discounted Dr. Birk's opinion is whether the ALJ provided specific and legitimate reasons for doing so that were supported by substantial evidence from the record, not the more stringent clear and convincing reasons standard advanced by plaintiff. Lester, 81 F.3d at 830-31. For the reasons discussed below, the ALJ provided specific and legitimate reasons for discounting Dr. Birk's opinion that were supported by substantial evidence from the record.

The ALJ properly determined that Dr. Birk's opinion contrasted with plaintiff's treating records showing that the symptoms caused by plaintiff's physical impairments remained stable when she was compliant with her medications. Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012); Meanel, 172 F.3d at 1114 (an ALJ may discount a treating physician's opinion that is "conclusory and unsubstantiated by relevant medical documentation"). In particular, the ALJ highlighted evidence from the record indicating that plaintiff's seizure activity was stable when she was taking medication for that condition. (E.g., AT 1081, 1086, 1088, 1090, 1094.) Furthermore, the ALJ noted that Dr. Birk's opinion contrasted with clinical testing notes from June 2012 showing that plaintiff's condition was "stable" with regard to seizures despite the fact that plaintiff had "sub-therapeutic" levels of anti-seizure medication and was generally noncompliant with her Dilantin therapy. (AT 1127-30.) The ALJ also highlighted the fact that the June 2012 treating records show that plaintiff exhibited no physical abnormalities upon examination. (AT 1128.) Finally, the ALJ properly considered the fact that plaintiff received only conservative treatment for her impairments, such as medication and nutritional advice, which kept her symptoms relatively stable throughout the course of the relevant period.[5]

---

[5] While the court notes that the record reflects that plaintiff also received emergency care for symptoms relating to seizures, diabetes, and her mental impairments, that care was provided to

9

In short, in light of the record as a whole, the evidence the ALJ cited to in support of his assessment of Dr. Birk's opinion constituted substantial evidence. Accordingly, the ALJ did not err in assigning reduced weight to Dr. Birk's opinion.

### b. Dr. Friesen & Dr. Dorsett

Plaintiff also contends that the ALJ erred by not discussing what weight, if any, he assigned to the opinions in the record issued by Dr. Friesen and Dr. Dorsett. However, the medical records issued by these two physicians that plaintiff highlights in support of her argument do not contain any opinions regarding what, if any, functional limitations were caused by plaintiff's impairments. See Champagne v. Colvin, 582 F. App'x 696, 697 (9th Cir. 2014) (unpublished) ("[Plaintiff's] contention that the ALJ disregarded his treaters' opinions about his limitations lacks merit, because none of the treating providers gave an opinion regarding his functional limitations."). Moreover, a review of the record fails to show that there exist any opinions issued by either Dr. Friesen or Dr. Dorsett that the ALJ failed to consider.[6] Indeed, the record reveals no opinions by Dr. Dorsett. With regard to Dr. Friesen, the ALJ considered the only opinion in the record issued by this physician, dated February 20, 2012 (AT 1239), and assigned it "little weight" because it merely opined that plaintiff's impairments rendered her disabled and did not contain any opinion as to plaintiff's functional limitations. (AT 31.) This was a proper reason for discounting Dr. Friesen's conclusory opinion as it opined solely on an issue that was reserved to the ALJ. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical

---

plaintiff prior to the period at issue in this action.

[6] Plaintiff also argues that the ALJ improperly failed to consider an opinion Dr. Friesen had issued on April 16, 2010, in connection with plaintiff's previously denied applications for benefits because the ALJ de facto reopened his previous decision denying those previous applications. However, for the reasons discussed above, the ALJ did not de facto reopen or reconsider his prior opinion regarding plaintiff's previous applications. Moreover, Dr. Friesen's April 16, 2010 opinion is not in the record. In addition, to the extent plaintiff describes that opinion, Dr. Friesen only opined that plaintiff could not work until December 10, 2010, and did not provide any opinion as to plaintiff's functional limitations. Therefore, even had the ALJ erred by not considering it, it would have been harmless error as Dr. Friesen opined only on an issue reserved to the ALJ. See Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished). Accordingly, the ALJ did not err by not considering Dr. Friesen's April 16, 2010 opinion.

10

source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1)-(2)) ("A treating physician's opinion on the availability of jobs and whether a claimant is disabled are opinions on issues reserved to the Commissioner."). "A treating source's opinion on issues reserved to the Commissioner can never be entitled to controlling weight or given special significance." Allen, 498 Fed. App'x at 696 (citing SSR 96-5p, 1996 WL 374183, at *5).

### c. Dr. Khan

Dr. Khan, a treating psychiatrist, provided an assessment of plaintiff's mental functioning on July 8, 2011. (AT 1028-30.) In that assessment, Dr. Khan opined that plaintiff had a "fair" ability to understand, remember, and carry out complex instructions and to maintain concentration, attention, and persistence. (AT 1030.) He further opined that plaintiff had fair-to-poor abilities to perform activities within a regular schedule and maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and respond appropriately to changes in a work setting. (Id.) Finally, he opined that plaintiff had a "good" ability to understand, remember, and carry out simple instructions. (Id.)

The ALJ weighed Dr. Khan's opinion as follows:

> This assessment is given some weight to the extent it shows the claimant is intellectually capable of performing simple unskilled work and has a fair ability to maintain concentration, persistence, or pace. These findings are consistent with the claimant's consistently normal mental status examinations and Global Assessment Functioning score of 51-65, consistent with moderate to mild symptoms or impairment, as detailed above. Conversely, Dr. Khan reported the claimant has fair to poor abilities to perform activities within a schedule, complete a normal workday/workweek and respond appropriately to change. These findings are given little weight. First, these findings are inconsistent with Dr. Khan's observations of normal speech, cooperative behavior, intact memory, and concentration, average intelligence, normal perception[,] normal thought processes and intact judgment. The undersigned notes that shortly after this assessment, the claimant obtained a Global Assessment Functioning score of 65, consistent with mild symptoms or impairment. Ultimately, the longitudinal record of mental health treatment reports contrasts greatly with these findings. To this end, the undersigned finds [the] State agency's later mental assessment is more accurate with the claimant's condition.

(AT 30 (citations to the record omitted).)

1    Plaintiff contends that the ALJ "cherry picked" the evidence in support of his assessment
2 of Dr. Khan's opinion because the ALJ relied on the fact that Dr. Khan had given plaintiff a
3 Global Assessment of Functioning ("GAF") score of 65,[7] indicating only moderate mental
4 limitations, after he issued his opinion, while failing to discuss the fact that Dr. Khan had given
5 plaintiff a GAF score of 45, indicating more severe symptoms, closer to the date on which his
6 opinion had been issued.  While plaintiff is correct that Dr. Khan assessed plaintiff with a GAF
7 score of 45 prior to the date on which he assessed her with a GAF score of 65, this fact alone does
8 not show that the ALJ improperly considered Dr. Khan's opinion.  The ALJ did not just rely on
9 the GAF score of 65 given by Dr. Khan, he also highlighted other GAF scores Dr. Khan gave to
10 plaintiff throughout the relevant period indicating that plaintiff had only moderate-to-mild mental
11 limitations.  AT 30, 833 (assessing a GAF score of 60 and indicating a past GAF score of 70),
12 850 (assessing a GAF score of 70 and indicating a past GAF score of 75), 1194 (assessing a GAF
13 score of 65 and indicating a past GAF score of 60).  Furthermore, the ALJ also relied on the
14 normal mental test results exhibited in Dr. Khan's examination notes from which Dr. Khan
15 derived his opinion.  (AT 1028-29.)  The ALJ was permitted to consider Dr. Khan's treating
16 records as a whole and resolve any conflicts contained in this record.  Edlund, 253 F.3d at 1156
17 (stating that it is the ALJ's responsibility to resolve ambiguities and conflicts in medical
18 testimony).  As the ALJ discussed in his decision, substantial evidence supported the ALJ's
19 reasonable resolution of the conflict between certain aspects of Dr. Khan's opinion, including the
20 GAF score of 45, and the rest of his treating records.  Accordingly, the ALJ did not err in
21 considering Dr. Khan's opinion.

                d.  Dr. Morris

23    Dr. Morris, a State agency non-examining physician, reviewed plaintiff's medical records
24 and issued a mental residual functional capacity assessment of plaintiff on August 16, 2011.
25 (1031-33.)  In a section titled "summary conclusions," Dr. Morris opined that plaintiff was

---

[7] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000).

"moderately limited" in her abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruption from her psychological symptoms; perform at a consistent pace; interact appropriately with coworkers, supervisors, and the public; and respond appropriately to changes in the work setting. (AT 1031-32.) When elaborating on plaintiff's mental functional capacity, Dr. Morris opined that plaintiff had a "sufficient ability" to understand, remember, and carry out simple instructions, and a "sufficient ability" to maintain adequate attention, concentration, persistence and pace. (AT 1033.) Similarly, Dr. Morris opined that plaintiff had a "sufficient ability" to maintain appropriate behavior in the context of limited contact and peer interaction and to cope with the demands of a routine work-like setting. (Id.)

When discussing Dr. Morris' opinion in his decision, the ALJ stated the following:

> These assessments are given great weight as they show the claimant is able to perform simple unskilled work with some co-worker and public contact. Such findings are supported by the multitude of Global Assessment Functioning scores from 51-65. The undersigned notes that, although the claimant has moderate limitations in social functioning, it does not preclude her from interacting with supervisors, co-workers and [the] public in the performance of simple unskilled work. In support of the fact that the claimant is able to interact appropriately with others, the undersigned emphasizes the claimant has a number of social contacts and family members that she interacts with regularly. Ultimately, [Dr. Morris'] assessment represents that most accurate characterization of the claimant's condition insomuch as she remains capable of simple unskilled work on a regular and consistent basis.

(AT 31 (citations to the record omitted).)

Plaintiff argues that the ALJ erred in considering Dr. Morris' opinion because he assigned that opinion great weight but failed to reflect in his RFC determination Dr. Morris' opinion that plaintiff had moderate limitations regarding her abilities to understand, remember, and carry out complex instructions, interact appropriately with supervisors, coworkers, and the public, and respond appropriately to changes in the work place. Plaintiff contends that this was error because the ALJ should have provided reasons for impliedly rejecting these aspects of Dr. Morris' opinion. As discussed below, plaintiff's argument is without merit.

As the Ninth Circuit Court of Appeals has held, an ALJ may interpret assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment provided that the limitations contained in the RFC determination accurately capture the claimant's level of functioning supported by the evidence. Stubbs-Danielson, 539 F.3d at 1173-74. Here, the ALJ's RFC determination was consistent with many of Dr. Morris' findings. Indeed, Dr. Morris opined that plaintiff could "adequately cope with the demands of a routine work-like environment," had a "sufficient ability to maintain appropriate behavior in the context of limited public contact and peer interaction," and was "capable of . . . responding appropriately to feedback from supervisors." (AT 1033.) The ALJ properly captured these RFC findings from Dr. Morris' opinion in his RFC determination that plaintiff could "interact appropriately with supervisors, co-workers, and public" and was "able to make work decisions and adjust to changes in the workplace." (AT 24.)

Plaintiff argues that the ALJ also impliedly rejected Dr. Morris' opinion that plaintiff was "moderately limited" in her ability to understand, remember, and carry out complex instructions. However, in addition to assigning "great weight" to Dr. Khan's overall opinion, the ALJ properly assigned "some weight" to the opinion of Dr. Khan, who also opined on the extent of plaintiff's mental limitations. Specifically, the ALJ found persuasive Dr. Khan's opinion that plaintiff had a good ability to understand, remember and carry out simple instructions, a fair ability to understand, remember, and carry out complex instructions, and a fair ability to maintain concentration, persistence, or pace. (AT 30.) The ALJ reasonably considered the opinion evidence regarding these limitations provided by both Dr. Khan and Dr. Morris and reasonably construed their findings to determine that plaintiff was occasionally capable of understanding, remembering, and carrying out complex instructions. (AT 24.) It was proper for the ALJ to make such a determination. Stubbs-Danielson, 539 F.3d at 1173-74. Accordingly, the ALJ did not impliedly reject certain aspects of Dr. Morris' opinion as plaintiff suggests. Instead, he considered Dr. Morris' findings in the context of the greater record and appropriately synthesized the limitations opined by Dr. Morris into the limitations reflected in his RFC determination.

////

3.   *Whether the ALJ Improperly Considered Plaintiff's Testimony*

Finally, plaintiff contends that the ALJ improperly found plaintiff's own testimony regarding the extent of her symptoms and functional limitations to be less than fully credible without providing clear and convincing reasons in support of that determination.

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." <u>Molina</u>, 674 F.3d at 1112.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the

court "may not engage in second-guessing." Id. at 959.

Here, the ALJ gave the following reasons in support of his determination that plaintiff's testimony concerning the severity of her symptoms and the extent of her functional limitations resulting from her impairments was not fully credible:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. First, the claimant reported she regularly cares for others. She indicated that she cares for her dog(s), including feeding the dog(s) and walking the dog(s) without any assistance. She reported that she moved to Sacramento to help her mother that [*sic*] has "cardiac problems." The fact that the claimant is able to care for others suggest [*sic*] she is less limited than alleged. Furthermore, the claimant has reported the following daily activities: performs personal care tasks, prepares daily meals, completes household chores, uses public transportation, shops for groceries and clothes, manages funds (when she has money), visits with friends and travels (most recently reporting a trip to Florida).
>
> Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. To this end, the undersigned notes that the claimant's seizure disorder is stable when compliant with medication, and she had flare-ups most prominently during periods of noncompliance. Furthermore, the undersigned notes that the claimant's mental condition presented as stable with proper medication and she had consistently normal mental status examinations.
>
> The undersigned acknowledges the claimant had an increase in mental health symptoms in November 2010, where she had a Global Assessment Functioning score of 45, consistent with serious symptoms or impairment. However, this evidence is given little weight in light of the claimant's other stable mental assessments, including normal mental status examination and improved Global Assessment Functioning score only 5 months later.
>
> A review of the claimant's work history shows that the claimant stopped working in 2008, approximately 2 years prior to the alleged disability onset date. Such evidence raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.
>
> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.
>
> The claimant has provided conflicting information regarding her seizures. In February 2011, the claimant executed a statement, wherein she indicated that she

> has 1-2 seizures per month. One month later, in March 2011, the claimant reported that she has seizures once every 6 months. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

(AT 28-29 (citations to the record omitted).) For the reasons discussed below, the ALJ provided clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence in the record.

First, substantial evidence supported the ALJ determination that plaintiff's daily living activities indicated that plaintiff's impairments were less disabling than what she alleged. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff reported daily activities such as caring for her dogs—including feeding and walking them—without assistance, preparing meals, grocery and clothes shopping, using public transportation, performing personal care tasks, and doing some household chores. (AT 103-07, 115, 261-64.) Plaintiff also reported that she was "help[ing] her mother who has cardiac problems" for at least part of the relevant period. (AT 831.) The ALJ appropriately determined that such reported activities undermined plaintiff's claims that she was physically limited to the extent that she alleged.

Furthermore, the ALJ also properly determined that plaintiff's testimony that she had limitations and symptoms that were totally disabling was undermined by the fact that she had received only conservative treatment throughout the course of the relevant period and that both her physical and mental impairments were well controlled by medication. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Indeed, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). Here, the ALJ highlighted substantial evidence in the record showing that plaintiff's seizure activity was largely stable when plaintiff was compliant with her prescribed medications. (E.g., AT 1081, 1086, 1088, 1095, 1129-30.) Similarly, he highlighted that symptoms stemming from plaintiff's mental impairments were relatively stable and that her medical records show that she had a consistently normal mental status when she was using prescribed medication and attending therapy sessions. (E.g., AT 849-51, 1173-74, 1183-84, 1192-94.) In short, substantial evidence supported the ALJ's determination that plaintiff's testimony regarding the extent of her limitations was undermined by the conservative treatment she received and the relative stability of her impairments when she was receiving that treatment.

The ALJ also discounted plaintiff's testimony based, in part, on plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." (AT 29.) Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *8. Here, while the ALJ specified that plaintiff's observed demeanor at the hearing indicated that she was less then fully credible, he also noted that this was one factor among many

that he took into consideration when weighing plaintiff's testimony. (AT 29.) Accordingly, in light of the other clear and convincing reasons the ALJ cited to in support of his determination, the ALJ's consideration of his own observations at the hearing was proper.

In sum, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations beyond the limitations assessed in the ALJ's RFC that were supported by substantial evidence from the record.[8]

### 4. *Plaintiff's Other Arguments*

Plaintiff also appears to assert arguments that the ALJ erred at steps two and three of the sequential analysis. More specifically, plaintiff seems to allege that the ALJ failed to include all of plaintiff's severe impairments at step two, and failed to find that plaintiff's impairments met or equaled a listing at step three. These arguments are not well taken.

With regard to her step two argument, plaintiff merely lists a number of other impairments and asserts that there is evidence in the record that plaintiff's physicians diagnosed plaintiff with them. (ECF No. 13 at 8-9.) The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were "severe" for step two purposes. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing Yuckert, 482 U.S. at 153) ("[T]he claimant must show more than the mere presence of a condition or ailment."); see also Mahan v. Colvin, 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a severe impairment."); Stoddard v. Astrue, 2009 WL 203034, at *11 (C.D. Cal. July 8, 2009) ("[T]he mere diagnosis of a disorder, without more, is not sufficient to show the existence of a severe impairment."). Accordingly, plaintiff's argument is without merit.

Similarly, plaintiff asserts that the ALJ erred at step three by failing to find that plaintiff's impairments met or equaled a listing without highlighting any evidence to support such an argument, or even asserting a particular listing that plaintiff's impairments supposedly met or

---

[8] While the ALJ also considered other reasons for his decision, the reasons discussed above are sufficient to uphold the ALJ's decision. Therefore, the court does not consider the remaining reasons.

equaled. Therefore, plaintiff's step three argument is not well taken. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (holding that the plaintiff failed to rebut the ALJ's determination that the plaintiff's impairments did not meet or equal a listing because the plaintiff "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment" and did not point "to evidence that shows that his combined impairments equal a listed impairment").[9]

V. CONCLUSION

In sum, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED.

3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: March 7, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[9] Plaintiff appears to also assert that the ALJ erred at step five by failing to incorporate all of plaintiff's limitations into the hypotheticals he posed to the vocational expert at the hearing. However, this argument is based entirely on plaintiff's assertion that the ALJ's RFC determination was erroneous because the ALJ improperly considered the medical opinion evidence and plaintiff's testimony. As discussed above, the court finds that the ALJ did not err in his assessment of that evidence. Therefore, to the extent plaintiff raises a step five argument, that argument is without merit.